# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

v.

**RICARDO CRAWFORD** (DOB: 01/28/91)

CRIMINAL COMPLAINT

CASE NUMBER: 09-83m (AEG)

I, **Kenneth N. Darling**, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about, December 14, 2009, in the State and Eastern District of Wisconsin, **RICARDO CRAWFORD,** the defendant herein, did knowingly and intentionally distribute heroin, a schedule I controlled substance. All in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C).

I further state that I am a Special Agent with the Drug Enforcement Administration, and that this complaint is based on the facts contained in the attached affidavit.

Continued on the attached sheet and made a part hereof: ✔ Yes

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

December 16, 2009
Date

at Milwaukee, Wisconsin
City and State

AARON E. GOODSTEIN, U.S. Magistrate Judge
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

AFFIDAVIT IN SUPPORT OF ~~SEARCH WARRANT~~ Complaint KD

I, Kenneth N. Darling, declare as follows:

1. I have been a Special Agent for the Drug Enforcement Administration (DEA) for approximately ten years, exclusively working drug investigations. For the past nine years, I have been assigned to the DEA Milwaukee District Office. In the course of my duties at DEA, I investigate violations of the federal narcotics laws, money laundering and other violation of federal law.

2. As part of my employment, I have received specialized training in investigating federal narcotics violations, including, but not limited to, training in drug identification, use of informants, undercover operations, search warrant procedures and investigative techniques used in the investigation of individuals and organizations involved in the illegal manufacture and sale of controlled substances.

3. During the course of my employment with DEA, I have participated in numerous investigations involving violations of the state and federal narcotics laws, and money laundering statutes. I have participated or assisted in numerous federal and state search warrants for narcotics-related offenses. These warrants involved the search of locations ranging from residences of targets, their associates and relatives, "stash houses" (houses used as drug/money storage locations), storage facilities, and telephonic paging devices. Evidence searched for, and recovered, in these locations have included controlled substances, records pertaining to the expenditures and profits realized there from, monetary instruments and various assets that were purchased with the proceeds of drug trafficking. I have had numerous discussions with other, experienced law

enforcement officers, and have conducted and been present at numerous interviews of self-admitted narcotics traffickers and cooperating defendants concerning the manner in which drug traffickers and money launderers operate. In the course of my employment and experience, I have also become aware of techniques and practices used by narcotics traffickers to avoid detection by law enforcement. Among these techniques are the use of counter-surveillance, multiple locations at which to conduct narcotics related activities, and keep records and narcotics, hidden compartments in vehicles used to hide narcotics and currency, the use of pagers, voice mail, cellular telephones, pay phones, and the use of numerous associates and "workers" to further their criminal enterprise. In addition drug traffickers often register assets in the names of third parties to avoid detection and discovery of assets obtained through drug trafficking.

4. All the information contained in this affidavit is, therefore, based upon personal knowledge and experience or information provided to me by officers of the Racine County, WI Metro Drug Unit, officers of the Kenosha, WI Police Department, agents of the Wisconsin Department of Justice Division of Criminal Investigation, agents of the Drug Enforcement Administration, and reliable confidential informants (CI).

5. Your affiant knows that the current investigation targeted Ricardo CRAWFORD, a heroin distributer in Kenosha, WI. Your affiant and case agents began investigating CRAWFORD in December 2009 after conducting interviews, in a separate case, where CRAWFORD was referred to as a heroin dealer by at least three Confidential Informants (CI). CI#1 purchased user quantities of heroin once a week for approximately

eighteen months ending during late 2008. CI#1 was told by Carlos HOFFMAN that he (HOFFMAN) supplied CRAWFORD with heroin to sell. HOFFMAN was recently indicted in the United States Federal Court Eastern District of Wisconsin for Conspiracy to Possess with Intent to Distribute Heroin. CRAWFORD is the son of HOFFMAN's girlfriend. CI#2 purchased an average of two grams of heroin from CRAWFORD, on at least forty occasions, over a two year period ending during late 2009. CI#2 stated if s/he could not make contact with HOFFMAN's heroin "runner", the SOI would call HOFFMAN directly for the heroin. HOFFMAN would often send CRAWFORD to deliver the heroin to CI#2. CI#2 attempted to "middle" a ten gram heroin transaction between "TWO BODY" of Racine, WI and CRAWFORD. CI#2 took a one gram heroin sample from CRAWFORD to show "TWO BODY". While showing the sample to "TWO BODY", CRAWFORD saw a police vehicle and threw the remaining nine grams of heroin plus his remaining heroin out the window of his vehicle. CI#2 stated most of the heroin transactions with CRAWFORD took place in an apartment complex parking lot located near 12th Street or Avenue in Kenosha, WI. CI#3 began purchasing heroin from CRAWFORD after HOFFMAN was arrested during early October 2009. CI#3 purchased ½ to two grams of heroin approximately every three days up until 12-09-2009. CI#3 stated s/he purchased at least twenty grams of heroin from CRAWFORD since HOFFMAN's arrest. CI#3 stated most of the heroin transactions with CRAWFORD took place in an apartment complex parking lot located at 39th Avenue and 15th Street in Kenosha, WI.

6. On 12-10-2009, CI#3 purchased approximately 1.1 grams of heroin, for $160.00, from CRAWFORD in an apartment complex located at 39th Avenue and 15th Street in Kenosha, WI. Surveillance was established on the parking lot prior to the arrival of CI#3. CI#3 parked in the parking lot, exited his/her vehicle and approached a silver Lincoln bearing Wisconsin plate 449PNP. CI#3 purchased the heroin from CRAWFORD and returned to his/her vehicle. Surveillance followed CRAWFORD and CI#3 from the area. CI#3 turned the heroin over to law enforcement. Wisconsin plate 449PNP is registered to Prestige Auto Sales of Kenosha, Inc, 3402 60th Street, Kenosha, WI.

7. On 12-14-2009, CI#3 purchased approximately 2.9 grams of heroin, for $190.00, from CRAWFORD. CI#3 was directed, by CRAWFORD, to meet at the McDonalds Restaurant on (7060) Green Bay Road, near Hwy 50, in Kenosha, WI. Once CI#3 was at the McDonalds Restaurant, CRAWFORD telephoned CI#3 and instructed him/her to go to the bathroom of the Taco Bell Restaurant that was located next to the McDonalds Restaurant. CRAWFORD sold CI#3 the heroin in the bathroom of the Taco Bell Restaurant. Surveillance watched and photographed CRAWFORD as he exited the restaurant and entered a silver, Dodge Magnum bearing Wisconsin plate 852RJN. Surveillance followed CI#3 and CRAWFORD away from the area. CI#3 turned the heroin over to law enforcement. Wisconsin plate 852RJN was also registered to Prestige Auto Sales of Kenosha, Inc, 3402 60th Street, Kenosha, WI.

8. Your affiant found, during a review of CRAWFORD's criminal history,

4

that CRAWFORD was arrested (charges still pending) on 04-23-2009 for Resisting/Failing to Stop/Fleeing, Possession of THC, and Disorderly Conduct.